Good morning. May it please the Court, my name is Kari Hong and I represent Petitioner Claude Bent. At Step 1, California's murder statute, Section 187, is overbroad to the generic murder offense because it criminalizes the killing of a fetus alongside the killing of a human being. Esquivel-Quintana establishes that Federal courts may define a generic offense based on various factors such as the Black's Law Dictionary, a closely related Federal statute, and state criminal codes that existed in 1996, the date of Ira Ira's enactment. Under every test, the generic definition of murder is limited to killing a human being, which renders Section 187 overbroad because it includes killing a fetus in its homicide statute. The BIA did not spend much time discussing what was meant by the human being element in M.W. or in this case, but that issue was in plain sight, and that oversight speaks to the BIA's lack of expertise in criminal law. The I.J. quoted 187 that mentions the killing of a fetus and the lack of expertise in criminal law. Yes, Your Honor. The court has recognized that there is deference owed to the BIA on matters interpreting immigration law, but when it comes to interpreting criminal law and criminal statutes, it's not. But they determine, they determine their own law. They don't need criminal expertise necessarily for that, become a criminal trial lawyer or something, as doing does nothing but study criminal law. They can determine what the BIA's rules and regulations are. That's true. They have the expertise. That's true. But in Esquivel, Quintana, the Supreme Court decided the meaning of, quote, sexual abuse of a minor, another generic term found in subsection A of the aggravated felonies where murder is located. The Supreme Court found no ambiguity in the equally defined generic term, sexual abuse of a minor, that did not reference any Federal statute. It may be unclear, but that does not make the term ambiguous. Esquivel-Quintana rejected the request for remand and rejected the request for Chevron deference because it showed that Federal courts have the tools to figure out the meaning by looking at the 1996 State statutes, the analogous Federal statute, and common law itself. This Court, then, has the authority and expertise to look at the common law, affirm the BIA, and conclude that laws that criminalize fetuses are overbroad to the generic definition. So if, going that far, that this one, California law, unlike many, has this additional and fetus, as I understand it, Mr. Bent has conceded, I mean, he says the law is divisible. Is that correct? Correct. And the BIA didn't address that, but that part doesn't really matter then, correct? Correct. We send then we move down to the next phase of analyzing under the various tests. So the difficulty I was having is once you get past the categorical and say it's categorical, is that true? Yes. Okay. So that's really where I want to focus the argument. I'm having sort of a common sense collision with a technical collision on the law because he never disputed in any way that a fetus was involved and everything in all the records say, of course, that the victims that were human. So it was a human individual. And I understand your argument is, but you can't define that from the pieces of paper. Is that right? On this particular record. On this record. On this record. Because the question is whether the two conviction records, two conviction documents, are adequate to narrow Mr. Bent's conviction to the generic definition. And what are the two conviction documents? The final judgment at 341, which lists only count 2 as, quote, Section 187A664, unquote. The DHS produced when the DHS only produces the, quote, fact of conviction, unquote. Under Contero-Salazar, the DHS cannot narrow the original complaint at 345. And it does not narrow the definition because the original charging document is not the document to which Mr. Platt. I thought there were cases that say the complaint is not a Shepard document. The complaint is a Shepard document. But the problem with this one is that the original complaint lists four criminal counts, murder, attempt on murder, gross vehicular manslaughter, and leaving a crime scene. But the final judgment only lists two counts, voluntary manslaughter, which are not alleged at all in the original complaint, the attempted murder, and then the other crimes of gross vehicular manslaughter, murder, and leaving a crime scene are not in the judgment. If I had a question about that, the attempted murder is listed on the abstract of judgment as count 2. Count 2, yes. But is there any question that that attempted murder is the same attempted murder that's in the charging document? Absolutely. The best case in point is Alvarado. There, because it's a modified count 2 in the judgment from the original document, there the quote is that, quote, that one could easily infer that, quote, modified count 1, unquote, arose from the same conduct as, quote, count 1, unquote, is not That is what Martinez-Perez, Alvarado, and Cisnero-Perez showed. Another of the three documents would have been sufficient, and the DHS did not do its job in the situation to produce the actual charges to which Mr. Bent pled guilty. Let me ask you a question. Should we remand it for that? No, Your Honor. The other cases, remand is not required when, first of all, as Mardina-Marlara suggested, that when the government has not suggested how it would cure the deficiency. And further, under Chalup-Higuera, when it's a matter of evidentiary deficiency, the DHS had noticed to comply with step 3 before so and cannot get a second bite of the apple, and that was the Chalup-Higuera case, which terminated proceedings rather than letting the government get a second bite of the apple. Let me ask you a question, if I may cut in. There's a — the person's indicted for a crime. The crime was murder or attempted murder. But there was no fetus involved, so they couldn't possibly — they couldn't possibly charge him with attempted murder of a fetus. So when you plead guilty to that, why haven't you already defined it because of the facts of the case? Well, the camp makes very clear that you do not look at the facts of the crime, but you look at the conviction or the elements of the conviction. I understand. We always have said you've got to find it in the colloquy or something. But it's impossible for him to be trying — for killing a fetus, impossible under the facts of the situation. It seems to me unrealistic. Maybe we have to do that. There's a lot of things that are unrealistic. But it thought — I don't see where your client is possibly in jeopardy. I'm sorry. I don't see where there's any jeopardy here. There's no fetus involved. Well, Your Honor, the DHS has a burden of proof. And it had the burden of proof at trial to sustain the removability. And if it failed to prove that, Chalapaguera directs this Court to terminate rather than give the government a second bite at the apple. Okay. So you get past that one. Come back to the other point. The BIA has the responsibility of taking a look at their own law. What is wrong with us remanding this back to the BIA to give a definitional status? Well, Your Honor, we agree that the BIA correctly identified the generic definition of murder, which is killing with malice a human being. That is the generic definition of common law, which the BIA properly addressed. And what's significant is that, as Escuela Quintana shows, is that there are numerous metrics by which the Court or the BIA could define the generic definition. Every single one of those tests leads to the same result. This matter of this case, then, is similar to the one in Fregoso, where the Court declined to remand to the BIA to determine if the California criminal statute matches the generic child abuse offense. Okay. Somebody else decided not to, but that doesn't prevent us from remanding it. Well, Your Honor, the government hasn't provided any counter-authority. And most significantly, Medina Lara was not forbidden for that either. The question, I think what Judge Wallace is asking, the question is, what is the rule by which we decide whether or not there should be a remand or, as you're arguing for, termination? Well, Your Honor, by contrast, with a particular serious crime, that would be an issue that deserves remand. What's the rule we apply? Well, does the BIA — it's the question within the expertise and scope of the agency. And where it's a particular serious crime, determination absolutely is. The question of whether a State statute meets the generic definition of a crime, that's — No, that's not the question. The question is, why shouldn't we remand? No, Your Honor, there could be other Shepard documents wrong, right? There could be, you know, a transcript of the plea call, but we don't know that. Do you know that? No, but the government hasn't asserted either. I know, but you don't — I don't know what he's going to say when he gets his chance to argue, but the question is, what is the rule we apply as to whether or not we remand? Well, Your Honor, there — You haven't told me what it is. Well, again, the practices of the other authority do terminate at this case. And for Mr. Bent in particular, he has been detained. He has three citizen children. He's been in LPR for 40 years. He's posted — It has nothing to do with the rule on whether we should remand, does it? Whether he's 46 or 45 or 24, has three or seven or eight children, what difference does it make on the issue of whether we should remand to the agency? Well, Your Honor, the question is, what purpose does the remand serve? Exactly. Now, you know, do you know there are no more Shepard documents available? Well, the government hasn't alleged any of this. Well, we'll talk to the government about that, but I mean, there's something — I understand all the details we have to run through, but there's something just jarringly non-commonsensical about the fact that a gentleman convicted of voluntary manslaughter and attempted murder that we — of a human — that we're somehow going to say that the petition is granted because the possibility, however impossible, of a fetus would command that result. I think that's the trouble we're having with this. And that's — so the question is, why not let the BIA take a look at it on remand? Well, for clarity, if the question is, is remand or denial, we'll definitely take remand. I would only ask the court that to consider the other authority and the other factors that termination is within their authority, within your authority to exercise as well. The one other last question, and I know you've got running time, but on the serious crimes issue and whether he poses a community danger, did the immigration judge use the wrong standard on that? Yes, Your Honor. It didn't have the benefit of Gomez-Sanchez and also the brief enumerated number of errors where he didn't actually — there, he's supposed to look at the facts. Instead, he just looked at the elements that attempted crime is really bad. There's an enhancement of a deadly weapon when he didn't look to see the deadly weapon was alleged to be a truck and it was a car accident. So there, that analysis wasn't done properly, and the remand to the agency is the body that needs to decide that properly. Thank you. May it please the Court, Your Honor, Sam Ramitz on behalf of the United States Attorney General. This immigration case, there are two narrow issues before the Court. The first is whether the record of conviction shows the petitioner was convicted of attempted murder under California Penal Code 187A and 664. The second is whether there's any legal issues the petitioners pointed out that were erroneous in the agency's particularly serious crime termination. Everything else in this case has been conceded, waived, or not exhausted. So as the panel noted, the petitioner concedes the visibility of California Penal Code 187A. Therefore, it's irrelevant whether it's categorically overbroad if the generic definition of murder includes murder of a fetus and murder of a human being, because the petitioner concedes it's a statute that has multiple crimes within it, one being murder of a fetus, one being murder of a human being. So we apply the modified categorical approach, we turn to the record of conviction, we determine whether it's murder of a human being or murder of a fetus. In this case, the government submits that the record of conviction clearly shows it's murder of a human being. But I'd also like to – Where does it – What is that record? Where is that clearly shown? What is that record? What are we looking at? We're looking at the judgment of conviction and the information. So this is at pages 341 through 344 of the administrative record. Right. And this is in response to the petitioner's claim, and the petitioner argued in the reply brief that there's some missing information in this case, so it doesn't line up with the judgment. There is not. This is the first and final information file in this case. What did not – That's the only information in the record file? When I say record, I mean the criminal court record? The only information? I'm not sure if there's further documents in the criminal record because it wasn't explored below because the petitioner has never challenged whether we needed more documentation. However, this information appears to be the final and last information because what is happening in this record, when you turn to the criminal information, it shows a California practice which is amendment by interlineation. So to the left in the margin of each one of those charges, you'll see writing. And what the writing is, like to charge one, which is – so the petitioner's argument, if I can back up for a second, is that there are four charges of information, only two in the judgment. They don't line up. So the first charge is murder, the second charge is attempted murder, the third charge is vehicular manslaughter, and the fourth is leaving the scene of an accident. Well, when you go through the information and look at the interlineation notes to the left of each charge, they reflect the plea agreement negotiations. So – Am I looking at – is the document you're looking at is called information? Yes. It's on page 343. Okay. It appears in different places. I have it as 487. Yes, that one, too. They're both the same, just one's not written. So there, the first count is the use of a deadly weapon, right? So if we start on page 343, or the – where's that for – well, 343, that's the redacted copy. The first count is murder, and you'll see to the left in the margin, it says PNC which stands for plea negotiation conference, and then 192A written to the left. What you're saying is all these handwritten notations amount to an amended information? Yes. It's a California practice called amendment by interlineation. Is there some authority that, you know, we can take that amended information as a shepherd document? It's – this count says – How do you know, you know, some clerk didn't do it or the defense lawyer or the DA didn't do it? The DA probably did write it, but it's only with permission of the judge. This is – Well, how do you know – how do we know that? Well, it's my experience, but also if you look it up in California State law. But the official – what's the State law that says what? Just California case law allows this practice of motion by interlineation is handwritten notes. But so the first one is PNC is the 192A on the left-hand side. Right, which matches up with the judgment, count 1, 192A. He pleaded down to voluntary manslaughter for murder. So count 1 matches count 1 of the judgment. It's reflecting the plea agreement. And as you move along, you go to count 2. It shows plea negotiation agreement PNC as charged. That also matches the judgment attempted murder as charged for count 2. And then every other charge has a note written next to it, dismissed per plea negotiation. It also matches up further because the top of the page on 344, which is the remaining part of the murder charge, says on the left, admits. Admits is the use of deadly weapon. And that is the enhancement that's also reflecting the judgment, which there's an enhancement charge, 12022. So it all matches up. The two counts in the information match up with the two counts in the judgment. It is the first and final information in the case. And there is likely a plea agreement and plea colloquy out there. But it's not necessary in this case because the record of conviction matches up. He was convicted of attempted murder as charged in this information. So what does the reference mean after 192A? I believe that's initials for whoever was present, but I'm not sure. Well, we don't know. I mean, that's a problem because I don't see that somewhere else. So all we have, if we don't know what that is, we have PNC? Plea negotiation conference. And what the court's rule is under Medina-Lara is it has to be clear and convincing evidence that the record of conviction shows this conviction. And I think that counts as clear and convincing evidence. Matches up between the judgment and the information. It shows everything matches up. You have as charged for count two, and count two is charged in judgment, convicted for attempted murder, count two. And count one, you have a plea down for murder to voluntary manslaughter, which is reflected in count one of the judgment, 192A. And you also have admitted for the enhancement under count one, which is also reflected in judgment. There's an enhancement charge. Everything else has dismissed next to it, which also is matched by the judgment. There's no further charges. That's really the narrow issue before the court as far as his removability as an aggravated felon is whether or not it believes this constitutes clear and convincing evidence that he was convicted of attempted murder of a human being. But the petition doesn't really contest that he did not murder a human being. It's really an argument that these documents don't match up. So let me just go back, though. He accuses him of murder under 187A, correct? Correct. Where does that turn into attempted murder? That's count two is charged as attempted murder. So you have murder and attempted murder, count one and two. Right. So murder turns into the voluntary manslaughter conviction. But, I mean, that's kind of one of the problems is that the attempted murder is count two here, correct? Correct. And that's 187A. And the first count is murder. Correct. And where does that turn into voluntary manslaughter? We see in the intermediation amendment to the left in the margin, it says PNC 192A. I know. I understand that. But the information says he's charged with murder, which is 187A. And then you're saying we should simply look at the handwritten note that says 192A. Yes. As an amendment to the information, it's charging 192A. And remind me again, what's encompassed within 192A? That's a voluntary manslaughter. I know. But what else does it say? Under any information? No, under 192A. Those are, I believe, initials for whoever was present, but I'm not certain. No, I think we're kind of missing each other on this one. Well, I'm trying to understand that under voluntary manslaughter, which is 192A, is anything else included in that statute? Oh, as far as using it as a movability? We're not charging that as a grounds for movability. We're only relying on count two, attempted murder, for movability as an aggravated felon. Can you give me here authority that this is, I guess, a common way to amend the information? It's routinely done and accepted as an official record? I can provide the court authority afterwards. It's just common practice in California. And so... That's the authority? It's common practice? Yes, it's allowed. And I can cite the rule later. I can dig up the rule and also cite some cases where it's present. But is it a rule in court? Yes. But you think that's where it ultimately goes back to, is the rule of court authorizes this kind of amendment to the information? Amendment by interlineation, yes. So let's just go, you're only relying on count two, the attempted murder? Yes, because we're charging it as removable as an aggravated felon murder, someone who's convicted of murder. So not voluntary manslaughter. So we're using the attempted murder charge. Only the attempted murder. And in the second count, it says, to murder Keith Jones, human being. Yes. So is there any variation between the attempted murder charges listed in this charging document and the attempted murder listed in the abstract of judgment? They're both count two? They're both count two. And in the marginalia, it says, as charged, next to count two. So plea agreement as charged. So count two doesn't change. That's my question. Yes. It goes right to the judge. It's kind of odd to use this and start there to say that if that's all you're relying on and it didn't change. And there you're referring, just so I'm clear, the handwritten notations on page two, right, 344. Yes. Okay. Do you need those? I think they're clear and convincing evidence is further clear and convincing that they match up perfectly with the judgment, that the judgment matches up with this amended version of the information. So count two, as amendment, says, as charged. That's attempted murder as charged. That's the amended information. It matches up with the judgment count two, attempted murder. Same with count one. It has been pled down or amended to 192A, voluntary manslaughter. And it matches up with the judgment count one, 192A, voluntary manslaughter. But you don't need that. We're not relying on voluntary manslaughter. I'm just trying to show, by example, how it matches up on each step between the judgment and the information. And then, if you go on, the other marginal notations are third and fourth counts are dismissed, right? Correct. And then the prior conviction is stricken. Correct. It has the, uh, Is that the way to read it? Yes. Everything else has been dismissed except for count one has been agreed to be amended to voluntary manslaughter. Count two is as charged. And count one also includes the enhancement, which he admits to. Right. And that matches up with the judgment. There is a sentence enhancement. There is the voluntary manslaughter. And there is attempted murder. And that makes the, uh, information match up with the judgment as amended. Yes. As amended. So, if you're saying that on attempted murder, that doesn't really change at all. It's count two. It's attempted murder of a human being. Correct. But you're using the voluntary manslaughter amendment to bustress it. Just an example to show how it lines up. Yes. All right. And so, do we know that there's anything other than this document? I think it's likely there is a plea agreement out there. It just was never challenged below. So, the government did not have to submit this information. Does the court have any questions on a particularly serious crime determinations in this case? Well, the question that I asked, um, Mr. Bent's counsel, and that may not matter, but the question of whether the wrong  And I don't see that addressed in that fashion. So, with the jurisdictional bar, because he's an aggravated felon, the court's jurisdiction is limited to legal claims. And I don't believe Petitioner's pointed out any meritorious legal claim like an improper standard applied to particularly serious crime determination. So, in this case, you had either conviction that the agency's relying on as a particularly serious crime. So, the court could find there's no legal error in either voluntary manslaughter as a particularly serious crime or attempted murder as a particularly serious crime. And there's no legal errors applied in this case. When the board looks at discretionary particularly serious crime determination, it looks at three factors. The nature of the offense, the type of sentence imposed, and the circumstances underlying it. And I don't think it can be argued that attempted murder and manslaughter, by their nature, are very serious crimes. So, that's the first factor. The sentence imposed for each crime, one was 11 years sentence, one was two years, two and a half years sentence. Those are very heavy sentences. And the circumstances are, it seems to be he drove an automobile with two people and killed one and the other. Aside from the argument that you've made, we did discuss with your opposition the possibility of remanding to the BIA. What would be your position on that, to let the BIA make definitional determinations? This is for the categorical question, whether or not the generic definition includes murder of a fetus. It's just not necessary in this case. It's uncontroverted that the statute is divisible. So, we don't need to answer that question. So, you don't feel that's necessary? Not in this particular case, but going forward, if there was some question that the documentation showed murder of a fetus, the board should have an opportunity to answer that question, whether or not the generic definition that the board enforces includes murder of a fetus. Okay. Now, going a little bit further, if we agree with you on the interpretation of the information and so forth, then we don't have to reach the particularly serious crime issue, do we? They're separate issues. You would have to reject the separate issue, a petitioner's claim that there's some legal error in the particularly serious crime determination, because he's removable as an aggravated felon, but he's applying for protection for withholding, and the particularly serious crime renders him ineligible for that form of protection. Thank you. Okay. I have three quick points on the handwriting question. We don't know whose handwriting that is. We don't know if that was entered at the criminal court. We don't know if those are notes from the record at the immigration court, as if we're trying to figure out what it is. What's significant is that you can't simply write a different code. There are different elements in 192, as there are in the substantive crime of murder of 187. Those elements are key. For instance, there is malice required under 187. There is no malice under 192. So this is an inadequate substitution. Kavanaugh, to Judge Toshima's point, Kavanaugh does recognize that California complaints are amended, and they can be amended informally. However, Kavanaugh recognized at the modified Step 3, when it was the same count that was in there was only one count in the information, only one count in the judgment. And there was a plea colloquy showing that he admitted to that. But here, the count 2 on attempted murder remains the same, correct? Yes. But the original three offenses in the original indictment aren't even present in the final judgment, which makes it very different than Kavanaugh. Kavanaugh had the same you could see the same line from the judgment to from the complaint to the judgment. Whereas here, we have three different convictions or three different charges that went away. A new one was added without knowing what the factual basis was. And again, with Alvarado, which is a key end point where they recognize a modified count 2 cannot be inferred to be the count 2 that was actually mentioned in the complaint. Cisneros is another point where there the defendant was or the noncitizen was charged with two domestic violence convictions relating to his wife. He pled or he was found guilty of a simple assault. And the court said we cannot presume that his wife was the victim when it's not alleged as such. The second issue is that the government must submit evidence. On page 37 of the brief, Child-Higuero says, with the DHS, there is a burden that the noncitizen was removable. Its failure to develop the record sufficiently is resolved against it. Because the government should not get a bite, a second bite of the evidentiary apple. And third, even if you disagree with this, the Ninth Circuit authority makes clear that an aggravated felony on its own is not a particularly serious crime. The key determination is, is the offender dangerous? On this record, Mr. Bent has two letters from prison officials attesting to his good character and rehabilitation. The BIA erred in overlooking that. It did so because it said it was never raised, but on page 39-40, there were five different points in his pro se briefing where he did allege there was an error on the PSC. So even if the court disagrees with me on the aggravated felony, request remand for a proper analysis of the particularly serious crime. Thank you. Thank you. Thank both counsel for your argument this morning. Bent v. Barr is submitted. The next case for argument is Taljinder Singh-Gio v. Barr.
judges: Wallace, Tashima, McKeown